UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JANNETTE HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:13-CV-304-REW |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| CAROLYN W. COLVIN, ACTING | ) | ORDER |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff, Jannette Howard, appeals the Commissioner's denial of her application for a period of disability, Social Security Disability Insurance benefits, disabled widow's benefits, and Supplemental Security Income benefits (collectively, "benefits"). The matter is before the Court on cross-motions for summary judgment. The Court **GRANTS** the Commissioner's motion (DE #20) and **DENIES** Howard's motion (DE #19) because substantial evidence supports the findings resulting in the administrative decision.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Howard is 57 years old. R. at 28. During her career, she worked as a licensed practical nurse ("LPN"), certified nursing assistant ("CNA"), and van driver. R. at 27-28, 39-42, 306, 313. However, she has not worked since August 13, 2010, the date she alleges her disability began. R. at 19, 22. She applied for benefits on February 22, 2011. R. at 265-73. Her claims were initially denied on June 6, 2011, R. at 180-83, and denied upon reconsideration on August 17, 2011, R. at 194-96. Howard then filed a written request for a hearing on August 29, 2011. R. at 19.

1

Administrative Law Judge ("ALJ") Ronald Kayser held a hearing on her application on May 25, 2012, in Hazard, Kentucky. *Id.* At this hearing, Howard appeared and testified; she was represented by Lucinda Cornett as counsel. *Id.* Martha R. Goss, an impartial vocational expert ("VE"), also testified. *Id.* The ALJ subsequently denied Howard's claim on June 18, 2012. R. at 16-29. In his decision, the ALJ found Howard's necrotizing fasciitis of the groin, problems with toiletry, diabetes mellitus II, obesity, and somatoform disorder were severe, but that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 23-25.[1] The ALJ found that Howard had the residual functional capacity ("RFC") to perform a range of medium work. R. at 25-27. The ALJ further relied on the testimony of the VE to establish that with her RFC, Howard could return to her past relevant work. R. at 27-29, 75-76. Alternatively, the ALJ found Howard capable of doing other jobs (thus foreclosing disability). The Appeals Council upheld the ALJ's decision on August 13, 2013.  R. at 1.

As the catalyst for these proceedings, while Howard was employed as an LPN, she was either pricked by a needle or had an open sore from a boil while in her employing nursing home and acquired a necrotizing fasciitis infection, more commonly referred to as flesh-eating bacteria disease. R. at 46, 666. She was hospitalized on August 14, 2010. R. at 401. She remained hospitalized for over a month, where she was diagnosed, received treatment, and underwent procedures for a variety of ailments. R. at 404. Particularly, she underwent two surgical debridements of the groin area by Dr. Todd Tom, who then officially diagnosed the necrotizing fasciitis. R. at 404, 406, 423, 431. After her release from the hospital on September 16, 2010, Dr. Tom saw her on follow-up, where he noted the possible need for skin grafting and a continued bad odor around her wound area. R. at 671. Howard was re-admitted to the hospital on

---

[1] Plaintiff does not contest this.

December 2, 2010, due to continuing infection in her left thigh area, at which time Dr. Bekoe Opoku-Owusu recommended a change in antibiotic. R. at 357, 364, 409-12. She had normal motor and sensory function in all extremities, and she promptly was discharged in stable condition. R. at 367, 360. Dr. Sree Suryadevara noted "no evidence of a necrotizing soft tissue infection currently." R. at 367. During this hospitalization, Howard received a normal psychiatric evaluation, interacted normally, and demonstrated appropriate affect and demeanor.[2] R. at 395. She did not and has not received mental health treatment. R. at 60.

Howard followed up on this series of treatment with her primary care provider, Dr. Michael Raichel. R. at 1697. Dr. Raichel, in the relevant period, diagnosed Howard with a variety of symptoms and diseases, including diabetes, headaches, hyperlipidemia, diabetic peripheral neuropathy, and hypertension. R. at 1699-1700, 1744-45. During repeated occasions of treatment, Howard reported she was doing fairly well, and she had a full range of motion in the joints of her extremities and normal muscle strength and tone. R. at 1697-99. She was alert, cooperative, and in a normal mood. R. at 1699. Follow-up treatment with Dr. Raichel revealed that Howard continued to do fairly well. R. at 1742, 1774-76, 1787. She reported tremendous improvement regarding her headaches and denied medication side effects. R. at 1742-43. Dr. Raichel recorded no musculoskeletal abnormalities and reported normal muscle strength. R. at 1743.

Dr. Kent Taylor also consultatively (for state DDS) examined Howard in April 2011. R. at 1704-06. Howard denied experiencing pain, anxiety, and difficulty concentrating, and her musculoskeletal examination was unremarkable. *Id.* Her gait, muscle strength, and grip strength

---

[2] Additional doctors also treated or assessed Howard, including Drs. Firas Koura, R. at 406-07, Alex Funicello, R. at 417-19, Aurora Lue, R. at 420-22, and Fraan Hughes, R. at 1273-75.

were normal. *Id.* Dr. Taylor did, however, note decreased light touch sensation on the upper left thigh, and he diagnosed surgical site numbness, incontinence, and diabetes. R. at 1706.

Additionally, Drs. Warren Bilkey and Tamara Musgrave examined Howard; they noted similar loss of sensation and incontinence, but also pain. R. at 1722-24, 1728-29. In particular, Dr. Musgrave conducted a one-time evaluation of Howard as part of Howard's workers' compensation claim connected to her flesh-eating bacteria infection. R. at 1721. Dr. Musgrave noted similar physical conditions, R. at 1723-24, but found Howard's mood and affect to be appropriate. R. at 1723. Dr. Bilkey similarly conducted a one-time evaluation (generating the reports, 9 months apart) and determined Howard faced physical conditions such as a large umbilical hernia, chronic groin pain, incontinence, unsteady gait, and obesity. R. at 1735.

Drs. Leigh Ann Ford and Robert Genthner[3] consultatively examined Howard's psychological issues. R. at 1710-19, 1778-85. They found some limitations in her ability to deal with stress and the pressures of day-to-day work activity, as well as limited ability to deal with the public, relate predictably in social situations, and demonstrate reliability. R. at 1716-17, 1779-84. However, Dr. Genthner found Howard could understand, retain, and follow detailed or complex instructions. R. at 1717. Howard was friendly, alert, and responsive during his examination. R. at 1711. Dr. Genthner specified that Howard gets along with her neighbors and has a best friend. R. at 1715. Dr. Ford indicated that Howard's mental capacities were satisfactory and her ability to remember was normal. R. at 1783-84, 1779.

---

[3] The record reflects confusion regarding the correct spelling of Dr. Genthner's last name. *Compare, e.g.*, DE #19-1 (Howard's Motion for Summary Judgment), at 5 ("Genthner"), *with id.* (eight words later, "Genther"), *and id.* at 11 (same). The Court adopts "Genthner" as the correct spelling; this is how Dr. Genthner spells it in his own report. *See* R. at 1710.

II.     **ANALYSIS**

      A.      *Standard of Review*

The Court has carefully read the full decision and all medical reports it cites. This has included review of reports or pertinent records generated as to Drs. Raichel, Bilkey, Taylor, Musgrave, Ford, and Genthner. The Court also read and considered the full administrative hearing and other parts of the record cited by the parties or significant to the ALJ's decision.

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing for judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *id.* § 1383(c) (providing for judicial review for Supplemental Security Income claims to the same extent as provided in § 405(g)). Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence, even substantial evidence, to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the

Court must affirm the ALJ's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of proof shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the SSA's construction of the statute should be

followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

> B.     *The Commissioner Did Not Err in Considering Howard's Impairments or in Finding Residual Functional Capacity.*

Howard first argues that the Commissioner improperly failed to consider Howard's pain, as documented by Drs. Raichel, Bilkey, and Musgrave, and the diagnoses of anxiety, chronic headaches, and peripheral neuropathy. DE #19-1, at 7. Howard argues that "no explanation is given as to why they are not considered by the Commissioner." *Id.* Second, and intertwined with the first assertion, Howard argues that the ALJ failed to address why her documented conditions should not be considered severe impairments. *Id.* Substantial evidence, however, supports the Commissioner's determinations. The ALJ carefully considered the entire record. R. at 22. The ALJ determined that Howard had five separate severe impairments: necrotizing fasciitis of the groin, problems with toiletry, diabetes mellitus II, obesity, and somatoform disorder. *Id.* The ALJ extensively catalogued Howard's conditions and diagnoses made by her host of treating and evaluating physicians (including reflected and discussed pain, anxiety, and headaches). R. at 23. The ALJ specifically mentioned and considered the reports of Drs. Raichel, Bilkey, Musgrave, Ford, and Genthner, counter to Howard's assertion. *Id.* ALJ Kayser found certain severe impairments, and he considered and assessed the particular symptoms Howard alleges he ignored. R. at 22-23. If the ALJ finds *any* severe impairment, he must consider *all* impairments—whether severe or not—in the subsequent steps of the evaluation process. 20 C.F.R. §§ 404.1523, 416.923; *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008). He did so, and substantial evidence supports his determination. Dr. Raichel's late 2010 report indicates that Howard was doing fairly well, with no complaints of pain, headaches, or anxiety. R. at 1697-99. Dr. Musgrave reported that Howard was in some pain and

had "problems with depression," but noted "[n]o headache[s]" and generally reported Howard was "[a]lert, cooperative, [and] oriented." R. at 1721-24. Finally, Dr. Bilkey assessed Howard to be in various types of pain, but stated that Howard could still engage in many types of activity, such as relating with co-workers, engaging in productive work activity, and following instructions. R. at 1728-32.

While Plaintiff fly-specks the decision for omissions, the Court must point out some of the obvious problems with the proof. The claim of pain was an inconsistent one throughout the term. Howard often reported no pain when seeing Dr. Raichel. R. at 1747 (Oct. 28, 2011); R. at 1753 (July 29, 2011). She reported numbness, but not pain, when she saw Dr. Taylor in late April 2011, mere weeks before the Musgrave and Bilkey encounters. R. at 1704-06 (reporting normal gait and no musculoskeletal pain).[4]

Headaches too were a sporadic or uneven event. They appeared in Dr. Raichel's July 2011 notes as potential migraines. R. at 1753, 1756. By January 2012, they had gone from several per week to only two over a two month span. Howard reported medications as effective. R. at 1742-43.

The ALJ carefully assessed the records for mental impairment and took into account the various and conflicting views. Anxiety did not appear in Dr. Raichel's treating records until post-decision. Howard reported to Dr. Ford **weekly** debilitating anxiety attacks and claimed they started immediately after the August 2010 workplace injury. R. at 1778, 1780 ("began after she had to quit work"). Those did not appear in Dr. Raichel's treating records during the entirety of

---

[4] Despite that, the ALJ did classify Howard as under a severe impairment for somatoform disorder, reflecting that he respected and accounted for Howard's pain as a significant limiter with respect to basic work activities. He could credibly make that finding without wholesale endorsing each and every view of the contributing experts.

the period—Dr. Raichel repeatedly recorded stability of mood and did not reference anxiety or any mental impairment. [Likewise, Dr. Bilkey's records contained nothing in this area.]

The ALJ's analysis fairly included all of the symptoms and conditions Howard lists. The extent to which the decision determined or accounted for impairments as impactful depended on the proof evaluation, which the ALJ reasonably conducted.

Third, Howard argues that, in violation of 20 C.F.R. § 404.1545(a)(2), the Commissioner failed to accurately described all of Howard's limitations in the RFC. DE #19-1, at 8. However, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted[.]" R. at 26. He specifically considered neuropathy, *id.*, and anxiety, as well as ability to interact with the public, deal with work stress, relate predictably in social situations, and demonstrate reliability, R. at 27. He specifically remarked on Howard's gait, non-use of a cane (both personally seen), reflexes, coordination, muscle strength/tone, and ability to stand/walk. R. at 26. Importantly, the ALJ made credibility determinations concerning Howard and certain examining physicians; the Court defers to those rational determinations. *See Bass*, 499 F.3d at 509. The ALJ rejected the limitations assessed by Drs. Bilkey and Musgrave because "they are not supported by acceptable medical evidence" and are "contradicted by other evidence and inconsistent with the evidence as a whole." R. at 27. Specifically, Dr. Raichel reported Howard's musculoskeletal exam and extremities were unremarkable, and he confirmed that Howard had normal sensation, reflexes, coordination, muscle strength, and tone. R. at 1698-99. Further, the ALJ found that Howard "is not entirely credible." R. at 27. He found the "severity of the symptoms and limitations are not as alleged and are not supported by the objective medical evidence[.]" *Id.* Specifically, Howard's testimony is inconsistent in many respects with the reports of Drs. Raichel and Taylor. *Compare* R. at 53-54, *with* R. at 1697; *compare* R. at 58-61,

67-68, *with* R. at 1704-06. The ALJ gave full consideration to Howard's alleged limitations in his determination of RFC and made findings of evidence weight and individual credibility, which the Court does not second-guess because they were reasonable and substantiated. *See Bass*, 499 F.3d at 509. Substantial evidence supports the ALJ's findings. The Court does not disturb them.

Fourth, Howard alleges the Commissioner erred at Steps 4 and 5 of the evaluation process in finding that Howard can perform prior relevant work as a CNA and as a van driver and that there is other work in the national economy she can perform. DE #19-1, at 9. Howard alleges that "[n]either finding appropriately considers [her] true limitations[.]" *Id.* Further, Howard argues that the Commissioner did not make the required findings as to the requirements for past work as a CNA or van driver, especially in light of the Commissioner's alleged failure to formulate a complete RFC. *Id.* at 9-10. The ALJ determined that Howard's past work "did not require the performance of work activities precluded by her medically determinable impairments[.]" R. at 28. The VE's testimony, which canvassed prior duties, confirmed that Howard "can return to the type of work she performed in the past." R. at 28, 72-76. While Howard can perform past relevant work, the ALJ alternatively also found other jobs in the national economy that she could perform.[5] R. at 28-29. He considered her age, education, work experience, and RFC in making this determination. *Id.* The ALJ's findings concerning Howard's capacity to perform past relevant work and other jobs in the national economy are supported by substantial evidence. Specifically, the VE's testimony supports his findings, as matched against his reasonable interpretation of the medical proof. R. at 72-78. The VE and ALJ discussed in detail the requirements of a CNA and van driver, as well as other jobs in the national economy Howard could perform. *Id.* As stated previously, the ALJ did not inappropriately consider her

---

[5] Representative occupations included industrial cleaner or machine tender. R. at 28-29.

limitations and did not improperly calculate her RFC. Accordingly, the Court does not unsettle the Commissioner's findings and conclusions.

C.    The Commissioner Did Not Err in Considering and Weighing the Opinions of the Examining Physicians.

Here, Howard first argues that the Commissioner lacked a sufficient basis for disregarding the opinions of four examining (but non-treating) physicians. DE #19-1, at 10. Specifically, Howard argues that the Commissioner failed to consider how the assessments of Drs. Bilkey and Musgrave support each other and are consistent with Dr. Raichel's treatment. *Id.* Additionally, Howard argues that the Commissioner relied on Dr. Taylor's report without addressing possible limitations of his findings. *Id.* The Court does not review the ALJ's credibility determinations *de novo* or make its own independent judgment regarding the proper weight of the physicians' opinions and reports. *See Bass*, 499 F.3d at 509. Instead, the Court engages in a review of the ALJ's findings to determine if substantial evidence supports his factual conclusions. *Id.* Here, substantial evidence plainly exists. ALJ Kayser examined the reports of Drs. Bilkey and Musgrave (who had only evaluated Howard one time each) in detail and specifically compared their findings with those of Dr. Raichel. R. at 26-27; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c) (Medical opinion weight depends on variety of factors, including the examining relationship, treating relationship, evidence presented, consistency with the record as a whole, and doctor specialization.). The ALJ noted at least one explicit inconsistency between the Bilkey and Musgrave reports concerning the existence of an umbilical hernia. R. at 26; *compare* R. at 1728 (indicating "very large umbilical hernia" on May 17, 2011), *with* R. at 1721-24 (not noting a hernia on May 16, 2011). Further, in addition to the reports' bilateral inconsistency, Howard testified that the hernia does not bother her. R. at 71. Additionally, the ALJ did not improperly consider Dr. Taylor's report. The ALJ accurately

11

summarized its findings and considered it in his determinations. R. at 27; *see* R. at 1704-06. Due to the inconsistencies in the Bilkey and Musgrave reports with the other evidence as a whole, with other doctors' reports, and with each other, the ALJ did not improperly discount them. Substantial evidence supports his determinations, and the Court does not interfere with them.

As to Drs. Bilkey and Musgrave, the Court also notes the following:

(1)     Dr. Bilkey generated different reports from one assessment. The first report did not focus on gait limitations, but the second one (though issuing from the same evaluation) did. Dr. Bilkey's repeated reference to the alleged hernia is particularly curious given that Dr. Raichel, who saw Howard many times over the period between 2010 and 2012, consistently and expressly reported absence of any hernia. R. at 1747, 1742, 1753. This is a credibility issue for Dr. Bilkey.

(2)     Dr. Musgrave, again within days of the encounter with Dr. Taylor, reports a patient with an 8/10 pain level. Dr. Musgrave cited significant ADL limitations and a need for help in ambulation, and noted depression. [Dr. Bilkey again noted no psychiatric issues.] Howard's reports to Dr. Musgrave—as to ADL limitations (*e.g.*, self-care) and psychiatric issues—largely conflict with contemporaneous reports to and observations by Dr. Raichel. The ALJ was entitled to make record-based distinctions between the sources premised on appropriate consideration of the full record and the hearing. Dr. Taylor's encounter was similar to Drs. Bilkey's and Musgrave's in scope; the ALJ simply found his conclusions better supported, and, most critically, more consistent with the overall record.

Second, Howard argues that the Commissioner failed to provide a basis for the decision on Howard's psychological impairments. DE #19-1, at 10-11. Additionally, Howard argues that the Commissioner failed to take into account that the VE hypothetically considered the

limitations assessed by Dr. Genthner and was unable to find any work Howard could perform. *Id.* at 11-12. Here, as above, substantial evidence supports the ALJ's determinations. He considered, in detail, Dr. Ford's report and findings, but he found them inconsistent with those of Dr. Genthner, as well as in conflict with Dr. Raichel's (the treating physician) findings and the other objective medical evidence. R. at 27; *compare* R. at 1779-81, *with* R. at 1714-15, 1717, *and* R. at 1699. Again, the severity and history of anxiety Howard reported to Dr. Ford (allegedly beginning just after the workplace injury, rendering her homebound, requiring her son's assistance with bill payment), simply and sharply conflicted with virtually all other proof. Dr. Raichel's office notes show almost no such history pre-decision. Dr. Genthner found significantly broader social interaction and financial independence. Howard herself reported independence in self-grooming, regular socialization, and regular trips to church. Dr. Raichel's visits show nearly no psychological component through the entire post-injury period. The ALJ had good reason for discounting Dr. Ford. Even Dr. Genthner's views, which arguably treated Howard as both capable and incapable of following complex instructions, were, in some measures, inconsistent. The ALJ sorted through the expanse of views and reached reasonable factual conclusions where there were differences, conflicts, or unsupported references.

The ALJ's decision, considering the consistency and reliability of the various doctors' reports, is also supported by the opinions of Drs. Diosdado Irlandez and Lawrence Annis, non-examining state agency medical consultants. *See* R. at 136-37, 138-41. They reported Howard has mental and physical limitations consistent with the ALJ's RFC finding. *Compare* R. at 25-26, *with* R. at 138-41, 156-57. The ALJ premised the VE hypothetical at least partly on Dr. Annis's review. The ALJ's finding is also consistent with Howard's own testimony on this subject, which is somewhat inconsistent with Dr. Ford's report. *Compare* R. at 59-60 (Howard

testifying that she does not go to mental health treatment, does visit her family, and sometimes goes grocery shopping), *and* R. at 1716-17 (Dr. Genthner finding adequate ability to understand and follow instructions, only mild limitations on capacity to deal with the public, and adequate ability to make simple work-related decisions), *with* R. at 1784 (Dr. Ford finding "social withdrawal (from even family activities)"). Additionally, as discussed above, the ALJ properly considered the VE's assessment of Howard's RFC and ability to return to prior work. *See* R. at 72-78. Counter to Howard's assertion, the VE found that a person with Howard's RFC (as supported in the ALJ's formulation) could return to the type of work she performed in the past. R. at 76-77. Howard's assertion is premised on a hypothetical posed to the VE, the conditions of which—moderate to marked restrictions—the ALJ disclaimed in his findings. *See* R. at 78, 24. In sum, substantial evidence supports the ALJ's determinations, and the Court declines to disturb them.[6]

## III.   CONCLUSION

Substantial evidence supports the Commissioner's determination to deny Howard benefits. The Court therefore **GRANTS** the Commissioner's motion for summary judgment (DE #20) and **DENIES** Howard's motion for summary judgment (DE #19).

The Court will enter a separate judgment.

This the 27th day of February, 2015.

---

[6] The Court disagrees that the ALJ under-credited the incontinences. Indeed, he included the toileting issues as a severe impairment. He took the scenario into account relative to work ability. The Court, however, does note the lack of discussion of this or related issues in the Raichel records (save for a mention of an "[i]mproved" condition of constipation in Dr. Rachel's November 14, 2012, report, *see* R. at 1790). Similarly, the ALJ certainly considered the presence of neuropathy, which Dr. Raichel had treated for some time. That condition did not keep Dr. Raichel from making repeat observations indicative of low effect relative to Howard's musculoskeletal and neurologic status.



Signed By:

*Robert E. Wier*

United States Magistrate Judge